SARTAIN, Judge.
This is an appeal by an injured employee from a judgment of the trial court dismissing his claim for maximum workmen’s compensation benefits upon the plea of one year prescription filed by his employer (Ethyl) and the latter’s workmen’s compensation insurance company (Travelers).
Plaintiff was employed by Ethyl in a managerial capacity as an electrical and instrument planner. In this capacity it was his responsibility to work up a particular job, make estimates as to its requirements in time and materials and issue to appropriate foremen work orders and purchase authority for the materials needed. It was plaintiff’s practice where possible to make an on site inspection of the various projects that he had specified. While walking through one of the passageways at defendant’s plant he stepped into a hole, fell, and sustained a low back strain which worsened because of pre-existing degenerative changes in his back.
Initially plaintiff was off of work for a period of six weeks at which time he was paid workmen’s compensation benefits at the rate of $35.00 per week by Travelers and the balance of his regular salary was paid by Ethyl. He returned to work and continued in his regular employment until July 1, 1968 at which time he was retired because he had reached the mandatory retirement age of 65.
The principal issue in this case revolves around the issue of whether or not the wages received by plaintiff from September 6, 1966 until the date of his discharge were actually earned or whether or not they were wages in lieu of compensation which interrupted the running of prescription. L.R.S. 23:1209. It is undisputed that from the date of plaintiff’s return to work until the date of his retirement, he endured considerable pain and was permitted on occasions to leave early or to even remain away from work for short periods of time without any resulting reduction in salary.
Plaintiff’s position is that he was not fully earning his salary because he was physically unable to do his work in the same manner as before and further that throughout the intervening time he suffered considerable discomfort and pain. Plaintiff endeavored to show that following the accident he was unable to climb stairs which was essential to his work or to sit or stand for prolonged periods of time.
The defendants countered by claiming that the plaintiff was a salaried employee and that it was not the company’s policy to make any deductions from their wages whether their absence from work was the result of an industrial accident or otherwise. Defendants further contend that plaintiff’s work was of the same caliber following the accident as it was before and that he was fully earning his wages. It was also shown that on three occasions following the accident plaintiff received moderate salary increases. Defendants further argue that the only reason for plaintiff’s leaving their employment was because he had reached the mandatory retirement age. In his written reasons for judgment the trial judge succinctly stated his findings of fact and conclusions of law as follows:
“The evidence shows that the plaintiff’s job was that of ‘an instrument and electrical planner’ acting in a supervisory capacity. It was his duty to schedule and process work orders for electrical and instrument work in the plant. This entailed for the most part paper work at his desk, but often he was required to visit other installations throughout the plant to discuss plans with various departmental personnel. This included some physical activity such as walking and a minimal amount of climbing. He performed no manual labor and used no tools. It is fair to state that he was what is called in the trade as a ‘paper mechanic’ in that eighty to ninety per cent of his time was devoted to paper work. After his injury he continued in the same position, but as described by *609 his superior ‘kinda on limited duty.’ He performed the same type of work, but with less legwork. This was accomplished by more use of the telephone for communication and with more assistance from a fellow employee. Another co-employee stated it this way: ‘He performed the same type of work after the accident as before the accident, but in a different manner.’
There is no question that Mr. Black suffered from pain during most of this period which was noticed by those employed with him. But in the final analysis, despite this disability and some accomodation (sic) by other employees, he was essentially performing the same job and rendering the same service after the accident as he was before. This opinion was concurred in by his former supervisor and fellow employee, who were called by him as his own witnesses. Consequently the Court concluded he was earning his wages and that regrettably the exception of prescription should be maintained.”
Counsel for plaintiff submits that the trial judge’s reasons for judgment, while recognizing plaintiff’s injury and resulting restrictions, is contrary to our holding in Carpenter v. Employers Mutual Liability Insurance Company of Wisconsin, La.App., 178 So.2d 486 (Writs refused, 1965). With this contention we must disagree. While there is language in Carpenter that the plaintiff therein was able to continue his work only with assistance of his fellow employees, the principal issue in Carpenter was not one of prescription but involved the question of whether or not the employer was entitled to receive credit for payments made to Mr. Carpenter. We believe in Carpenter that we correctly stated the basic test for determining whether or not an employer is entitled to receive credit for payments made to an injured employee and that test is whether or not the wages are actually earned. If the wages are not earned as in Carpenter then the employer is entitled to receive compensation credit for the number of weeks such “wages” were paid.
The burden of proof in the instant action rests upon the plaintiff because he instituted this suit more than one year following the last payment of workmen’s compensation to him and further alleged the interruption of prescription. L.R.S. 23:1209. Deen v. Halliburton Oil Well Cementing Co., 180 So.2d 584 (1st La.App., 1965); Mella v. Continental Emsco, 189 So.2d 716 (1st La.App., writs refused, 1966) and Daigle v. Liberty Mutual Insurance Co., 205 So.2d 507 (3d La.App., 1968).
Plaintiff’s injuries manifested themselves upon the occurrence of the accident on August 17, 1966 and from that moment on there reposed in him an option to either return to work or to claim compensation benefits. He was entitled to the latter because the record is amply clear that from the moment of the accident until the date of his retirement he worked while enduring rather severe pain and discomfort. Mr. Black elected to return to his employment and to work under these conditions. From the date of the accident, an option also rested with the employer to either continue paying plaintiff workmen’s compensation and terminate his employment or permit him to return to work. In the event the latter course is followed (as it was in this case) the employer must then decide whether or not the wages paid are fully earned or are in the nature of a gratuity. If the wages are not actually earned then the tolling of prescription has not commenced.
While we fully recognize that plaintiff’s statement that he did not feel that he was earning his salary because he was not performing as efficiently as he had previously is sincerely given, it does not accord with the testimony of his immediate superior and a fellow worker.
Mr. L. J. Holmes, Sr., a witness called by plaintiff, described plaintiff’s duties as principally that of a “planner”, a position *610 that he had held for some three years prior to the accident. He negated somewhat the necessity for plaintiff to do the amount of climbing plaintiff asserted was necessary because he explained his job as consisting of processing work orders and essentially office work. Mr. Holmes recalled that on numerous occasions he suggested to plaintiff that he take some time off because he was in obvious discomfort. But the inescapable conclusion from an overall evaluation of his testimony is that plaintiff was earning his salary. This witness was asked the following question and specifically answered thusly:
“Q Basically Mr. Black performed the same job before and after the accident, isn’t that correct?
A Right.”
Mr. John Sharkey, who worked in the office with plaintiff and was called as one of plaintiff’s witnesses testified under cross examination:
“Q Would it be fair to say, Mr. Sharkey, that Mr. Black performed basically the same type of work for Ethyl Corporation both before and after this accident of August • 1966 and up until the time he retired ?
A Yes, in a different manner, of course.
Q And to the best of your knewledge (sic), Mr. Sharkey, Mr. Black was actually performing the job that he was being paid to do by Ethyl Corporation to the best of your knowledge, is that correct?
A Yes, sir.”
There is no overtone of any gratuitous action or misleading conduct on the part of the defendant which would remotely lead to any consideration of the fact that Ethyl permitted plaintiff to remain in its employment for the purpose of lulling him into a sense of false security thereby inducing him to forego the timely filing of a claim for compensation benefits. On the contrary, this record fully supports the conclusion of the trial judge that plaintiff earned the wages paid him.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant’s costs.
Affirmed.